THE CHICAGO LUMBER COMPANY OF OMAHA, A NEBRASKA CORPORATION, DOING BUSINESS AS FRIEND LUMBER COMPANY, FRIEND, NEBRASKA, APPELLANT, V. SCHOOL DISTRICT NO. 71 OF MILLIGAN, FILLMORE COUNTY, NEBRASKA, APPELLEE.

417 N.W.2d 757

Filed January 15, 1988.    No. 85-888.

356

Robert H. Berkshire, Richard N. Berkshire, and Robert E. Zielinski, for appellant.

Kelley Baker and Jerry L. Pigsley of Nelson & Harding, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

SHANAHAN, J.

The Chicago Lumber Company of Omaha (Chicago) appeals the judgment for school district No. 71 of Milligan,

Fillmore County, Nebraska (district), in a negligence action brought under the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 23-2401 et seq. (Reissue 1983). We reverse and remand for further proceedings.

During the summer of 1982, the district got in touch with Melvin Stejskal, a contractor in Milligan, concerning renovation of certain windows at the district's Milligan school. Stejskal, a carpenter for about 15 years, had an open account at Chicago's local lumberyard and contacted Harold Brown, Chicago's manager, regarding the cost of material for the district's proposed window project. Based on the information from Chicago, Stejskal submitted his project bid to the district, which accepted Stejskal's bid in late July or early August 1982.

The Nebraska Construction Lien Act, Neb. Rev. Stat. §§ 52-125 et seq. (Reissue 1984), does not apply to real estate owned by a governmental agency or political subdivision, and, hence, did not apply to the district's real estate which was the subject of the renovation project. However, regarding a contract for repairing a school district's building, structure, or improvement, Neb. Rev. Stat. § 52-118 (Reissue 1984) in part provides that the school district shall

> take from the person, persons, firm, or corporation to whom the contract is awarded a bond, in a sum not less than the contract price, with a corporate surety company, conditioned for the payment of all laborers and mechanics for labor that shall be performed and for the payment for material and equipment rental which is actually used or rented in the erecting, furnishing, or repairing of the public structure or improvement or in performing the contract.

The district did not require that Stejskal file the bond specified in § 52-118. Without inquiry whether a contractor's bond had been filed concerning the window renovation project, Chicago supplied Stejskal with material used in the district's project.

On August 2, 1982, the district's board authorized payment of the contract price, $4,280, to Stejskal for the renovation project, although some minor work remained undone. The board directed Marshall Tonnies, school superintendent, to inspect the project and pay Stejskal when the work was

completed. After an inspection on August 20 and notwithstanding incompletion of the work, Tonnies gave Stejskal the district's check for $4,280, with Stejskal as the only named payee. According to Chicago's invoices or "tickets," the last material was delivered to Stejskal on September 7 and Stejskal completed the window project on that date or shortly thereafter. The total cost of Chicago's material delivered to Stejskal for the project was $4,005.17.

Chicago contacted Superintendent Tonnies on September 30, inquired whether Stejskal had been paid for the renovation project, and was told that the district had paid Stejskal. Subsequently, Brown visited with Superintendent Tonnies and members of the district's board in attempts to "figure a way to get [Stejskal] to pay," but Chicago received no payment on the district's renovation project.

On March 23, 1983, Superintendent Tonnies received a letter from Chicago's attorney, which was addressed to "School District # 71 of Milligan, Fillmore County, Nebraska." The attorney's letter referred to the "building materials and supplies which were provided to Stejskal Building Services in connection with the recent renovation and improvement of your school." The letter then continued:

> As you may be aware, Nebraska Revised Statutes Section 52-118 provides that all school boards within the State of Nebraska must require any contractors who perform construction work relating to the erection, furnishing or repair of any public building or other structure to take out a corporate surety bond in a sum not less than the contract price, which shall be conditioned upon the full payment of all laborers, mechanics and materialmen who become connected with the project.
>
> The Section further provides that the bond shall be filed with and approved by the school board and that no contract may be entered into until the bond has been so filed and approved.
>
> As I am sure you are aware, there was no bond in the present case, which means that my client has suffered damage as a result of the school board's failure to follow the statutes properly. We have been directed to institute a

lawsuit against the school as a result of the failure to collect the full amount owing and will do so unless we hear from you within ten (10) days from the date of this letter.

The attorney's letter of March 23 did not specify the exact date or dates on which Chicago's material was delivered to Stejskal, although Superintendent Tonnies realized that the material indicated in the attorney's letter related to the window project, which, as far as the record discloses, was the only renovation, construction, or repair undertaken for the school in August and September of 1982. Superintendent Tonnies' capacity with the district was characterized as "the chief executive officer of the district," responsible for "financing of the school district," the "management of the personnel and the property of the school district," and "maintaining the office records of the school district," including minutes of meetings held by the district's board. The district's attorney received a letter from Chicago's attorney on August 26, 1983, and sent that correspondence to Superintendent Tonnies, who received the forwarded correspondence on August 29. This second letter specifically stated that the demand against the district was made under the Political Subdivisions Tort Claims Act.

## PLEADINGS

When the district did not pay in response to Chicago's demand, Chicago filed suit on April 5, 1984. In an amended petition pursuant to the Political Subdivisions Tort Claims Act, Chicago alleged delivery of the materials to Stejskal for the construction at the district's school, the district's payment to Stejskal and Stejskal's failure to pay Chicago, the district's negligent failure to require and obtain a bond specified by § 52-118, Chicago's filing a written claim as required by the Political Subdivisions Tort Claims Act, and an elapsed 6 months without the district's payment for the material delivered to Stejskal concerning the construction project at the school.

In its answer, the district generally denied Chicago's petition, but admitted that the district did not obtain a construction bond for the window project. As a "FIRST AFFIRMATIVE DEFENSE," the district claimed that the trial court lacked subject matter jurisdiction "because [Chicago] failed to inquire of [the district] about the existence of a construction bond

before relying upon said bond." In its "SECOND AFFIRMATIVE DEFENSE," the district asserted that Chicago had failed to file its claim within the time prescribed by the Political Subdivisions Tort Claims Act. As a "THIRD AFFIRMATIVE DEFENSE," the district alleged: "This court lacks jurisdiction because [Chicago's] Petition was not filed within one year of the completion of the contract at issue, pursuant to the requirements of Nebraska law."

POLITICAL SUBDIVISIONS TORT CLAIMS ACT

As a declaration of purpose for the Political Subdivisions Tort Claims Act, § 23-2401 states:

> The Legislature hereby declares that no political subdivision of the State of Nebraska shall be liable for the torts of its officers, agents, or employees, and that no suit shall be maintained against such political subdivision on any tort claim except to the extent, and only to the extent, provided by this act. The Legislature further declares that it is its intent and purpose through this enactment to provide uniform procedures for the bringing of tort claims against all political subdivisions, whether engaging in governmental or proprietary functions, and that the procedures provided by this act shall be used to the exclusion of all others.

There is no doubt that the district's board is a "governing body" within § 23-2402(2). Subsection (4) of § 23-2402 states:

> Tort claim shall mean any claim against a political subdivision for money only on account of damage to or loss of property or on account of personal injury or death, caused by the negligent or wrongful act or omission of any employee of the political subdivision, while acting within the scope of his office or employment, under circumstances where the political subdivision, if a private person, would be liable to the claimant for such damage, loss, injury, or death . . . .

Section 23-2404 provides in part:

> All tort claims under this act shall be filed with the clerk, secretary, or other official whose duty it is to maintain the official records of the political subdivision . . . . It shall be the duty of the official with whom the claim is

filed to present the claim to the governing body. All such claims shall be in writing and shall set forth the time and place of the occurrence giving rise to the claim and such other facts pertinent to the claim as are known to the claimant.

As a part of the Political Subdivisions Tort Claims Act, § 23-2416 specifies time limits for filing a claim and suit, which in pertinent part includes:

(1) Every claim against a political subdivision permitted under this act shall be forever barred, unless within one year after such claim accrued, the claim is made in writing to the governing body. Except as otherwise provided in this section, all suits permitted by this act shall be forever barred unless begun within two years after such claim accrued.

. . . .

(4) This section and section 25-213 [actions by persons under a legal disability] shall be the only statutes of limitations applicable to tort claims as defined in this act.

Section 23-2417 dictates:

From and after January 1, 1970, the authority of any political subdivision to sue or be sued in its own name shall not be construed to authorize suits against such political subdivision on tort claims except as authorized in this act. The remedies provided by this act in such cases shall be exclusive.

BOND STATUTE

Neb. Rev. Stat. § 52-118.01 (Reissue 1984) provides that one who has furnished material in accordance with § 52-118, after nonpayment for 90 days, "shall have the right to sue on such bond for the amount, or the balance thereof, unpaid at the time of the institution of such suit . . . ."

Neb. Rev. Stat. § 52-118.02 (Reissue 1984) contains a statute of limitation regarding an action on the construction bond required by § 52-118, namely: "Every suit instituted under the provisions of sections 52-118 to 52-118.02 shall be brought by any person entitled to the benefit of this action, but no such suit shall be commenced after the expiration of one year after the date of final settlement of the principal contract."

## DISPOSITION BY TRIAL COURT

At the conclusion of the evidence, the district's counsel moved for dismissal of Chicago's action or a "directed verdict" on two bases. First, the district claimed that the 1-year statute of limitations on a bond action, prescribed by § 52-118.02, barred Chicago's action because Chicago's suit, filed in 1984, was not commenced within 1 year after August 20, 1982, the date of final settlement on the district's contract with Stejskal. Second, as a claim form, the March 23, 1983, letter from Chicago's attorney did not comply with the formal requirements of § 23-2404.

The court found that "it is without jurisdiction in this matter" and "even if it had jurisdiction the holdings in *Paxton & Vierling Iron Works v. Village of Naponee*, 107 Neb. 784 are controlling and [Chicago's] action must be dismissed." The court then dismissed Chicago's petition.

In view of the district court's reference to *Paxton & Vierling Iron Works v. Village of Naponee*, 107 Neb. 784, 186 N.W. 976 (1922), an examination of that case is helpful in considering the trial court's dismissal of Chicago's action. Paxton & Vierling supplied material to a contractor employed by the village to construct a footbridge. The village did not obtain a bond from its contractor for payment of material used in the bridge construction, notwithstanding a statute which imposed on the village board the duty to require a construction bond. When the contractor failed to pay for the bridge material, Paxton & Vierling sued the village and alleged that, as a result of the village's "failure and neglect . . . to exact a bond," *id.* at 785, 186 N.W. at 976, Paxton & Vierling sustained damages on account of the contractor's nonpayment, but did not allege that Paxton & Vierling furnished the material in reliance or belief that the village had obtained a bond from the contractor. The village demurred, claiming that Paxton & Vierling's petition failed to state a cause of action. The trial court sustained the village's demurrer and dismissed the action. In affirming judgment for the village, this court stated:

> The statute required the bond to be filed, and plaintiff knew, or by exercise of ordinary diligence could have known, that no bond had been taken and filed. Plaintiff

was chargeable with notice that no bond had been taken, and had no right to impose liability on the village or the members of the village board. When it knew, or could by the exercise of ordinary care have known, that no bond was given, and voluntarily furnished the material, it will be presumed that it furnished the material solely upon the credit of the contractor. . . . Because there is no averment in the petition of nonpayment of the material, and because it is not alleged that plaintiff furnished the material relying upon the belief that a bond had been given and had no knowledge that no bond had been given, we hold that the petition failed to state a cause of action, and that the demurrer was properly sustained.

107 Neb. at 787-88, 186 N.W. at 977.

## ASSIGNMENTS OF ERROR AND ARGUMENTS

Chicago contends that prosecution of its claim is governed by the Political Subdivisions Tort Claims Act rather than the provisions of §§ 52-118.01 and 52-118.02 concerning an action on a contractor's bond. Chicago argues that, on compliance with the provisions of the Political Subdivisions Tort Claims Act, the district court was empowered to adjudicate Chicago's claim against the district. Chicago suggests that the trial court misapplied *Paxton & Vierling Iron Works v. Village of Naponee, supra*, in disposing of Chicago's claim.

The district counters that the Political Subdivisions Tort Claims Act is inapplicable to Chicago's claim, which was not brought within the 1-year limitation prescribed by § 52-118.02 and is, therefore, barred. Also, the district, assuming for the sake of argument that the Political Subdivisions Tort Claims Act does govern prosecution of Chicago's claim, contends that Chicago did not file its claim in the form prescribed by the act and further contends that Chicago cannot recover in any event, because Chicago did not rely on a contractor's bond in supplying the material and was contributorily negligent to a degree more than slight by its failure to inquire about existence of a bond before deliveries to Stejskal.

Thus, in the case under review, the district court made no finding on the merits of Chicago's claim, but disposed of the action on the basis of "jurisdiction," which aspect of the

proceedings, as presented by the parties, is distilled into the question: If *Paxton & Vierling Iron Works v. Village of Naponee, supra*, is inapplicable in this case, did Chicago timely file a claim in compliance with the Political Subdivisions Tort Claims Act? Contributory negligence, as an affirmative defense to Chicago's claim, was not pleaded and, therefore, was not decided by the district court. "The Supreme Court disposes of an appeal on the basis of the theory presented by the pleadings on which the case was tried." *Holden v. Urban*, 224 Neb. 472, 474, 398 N.W.2d 699, 701 (1987). See, also, *Foltz v. Northwestern Bell Tel. Co.*, 221 Neb. 201, 376 N.W.2d 301 (1985).

## APPLICABILITY OF POLITICAL SUBDIVISIONS TORT CLAIMS ACT

Sections 52-118.01 and 52-118.02 do not govern prosecution of Chicago's claim. Given the governmental duty to require and obtain a bond from a contractor (§ 52-118), § 52-118.01 refers to "the right to sue on such bond" and clearly relates to a suit based on an existing contractor's bond filed with a school district, a contract action. However, Chicago's suit is not based on an existing contractor's bond; rather, Chicago's suit is based on the absence of a bond as the result of the district's alleged negligence in failing to require and obtain a contractor's bond to protect a supplier of material for the district's window project. Concerning a "tort claim" for the negligent omission of a contractor's bond, see § 23-2402(4), the procedures provided by the Political Subdivisions Tort Claims Act "shall be used to the exclusion of all others." § 23-2401. See, also, § 23-2417 (the Political Subdivisions Tort Claims Act is the "exclusive" remedy concerning "tort claims" against political subdivisions). Consequently, Chicago's action for the district's negligence is governed by the Political Subdivisions Tort Claims Act, not by the statutes governing a contract action on a contractor's bond filed in accordance with § 52-118. Correspondingly, subject to the exception pertaining to actions by persons under a legal disability described in Neb. Rev. Stat. § 25-213 (Reissue 1985), the statute of limitations on filing a claim or suit for a political subdivision's tortious conduct is exclusively prescribed by § 23-2416 of the Political

Subdivisions Tort Claims Act.

## JURISDICTION REGARDING CHICAGO'S TORT CLAIM

Jurisdiction is the inherent power or authority to decide a case. *State ex rel. Bauersachs v. Williams*, 215 Neb. 757, 340 N.W.2d 431 (1983); *Andrews v. City of Lincoln*, 224 Neb. 748, 401 N. W.2d 467 (1987).

In a suit to recover on a claim made under the Political Subdivisions Tort Claims Act, "Jurisdiction . . . shall be determined in the same manner as if the suits involved private individuals, except that such suits shall be heard and determined by the apppropriate [sic] court without a jury." § 23-2406. Whether a claimant may maintain an action brought under the Political Subdivisions Tort Claims Act or, ultimately, whether a claimant may prevail in such action is a matter for adjudication by a court exercising jurisdiction in accordance with the Political Subdivisions Tort Claims Act. It is beyond question that the district court had the power to determine whether Chicago was entitled to maintain its action brought under the Political Subdivisions Tort Claims Act. As a matter of law, the district court incorrectly determined that it had no jurisdiction regarding the suit brought by Chicago.

Although lack of jurisdiction was assigned by the district court as the ground or reason for the district court's dismissal of Chicago's action, notwithstanding that the district court actually had jurisdiction to decide the case, the fact remains that the district court dismissed Chicago's action. We must, therefore, determine whether the . district court properly dismissed Chicago's action because the suit was barred as the result of an untimely claim. "Where the record adequately demonstrates that the decision of a trial court is correct, although such correctness is based on a ground or reason different from that assigned by the trial court, the Supreme Court will affirm." *Sommerfeld v. City of Seward*, 221 Neb. 76, 80, 375 N.W.2d 129, 132 (1985). "A correct result will not be reversed merely because a trial court reached that correct result for an incorrect reason." *Travelers Indemnity Co. v. Heim*, 223 Neb. 75, 80, 388 N.W.2d 106, 110 (1986). See, also, *Gordman Properties Co. v. Board of Equal.*, 225 Neb. 169, 403 N.W.2d

366 (1987); *Gall v. Great Western Sugar Co.*, 219 Neb. 354, 363 N.W.2d 373 (1985).

NECESSITY AND NATURE OF NOTICE

The Political Subdivisions Tort Claims Act reflects a limited waiver of governmental immunity and prescribes the procedure for maintenance of a suit against a political subdivision. See §§ 23-2401 and 23-2409 (conduct and claims excluded from the act). As a condition precedent to commencement of a suit brought under the Political Subdivisions Tort Claims Act, one must timely file a proper claim with the appropriate political subdivision. See, *Utsumi v. City of Grand Island*, 221 Neb. 783, 381 N.W.2d 102 (1986); *Campbell v. City of Lincoln*, 195 Neb. 703, 240 N.W.2d 339 (1976).

A claim against a political subdivision must be filed within 1 year after such claim has accrued or shall be forever barred. § 23-2416(1). Chicago maintains that its claim against the district accrued when, on September 30, 1982, it discovered the district's payment to Stejskal. In that event, Chicago's claim, by its attorney's letter on March 23 or August 26, 1983, was timely made against the district. The district believes that Chicago's claim matured on August 20, 1982, when the district paid Stejskal. The district asserts that Chicago's claim, that is, the March 23, 1983, letter from Chicago's attorney, is fatally defective, because the claim does not state the exact date and the precisely specified location of the occurrence which is the basis of Chicago's claim. If Chicago's claim reflected in the letter of March 23 does not meet the requirements of the Political Subdivisions Tort Claims Act and, consequently, is actually no claim at all, then the claim indicated in the attorney's August 26 letter to the district was not timely made. However, if the March 23 letter from Chicago's attorney satisfies the formal requirements of a claim under the Political Subdivisions Tort Claims Act, then Chicago's claim was timely made, inasmuch as any of the dates for accrual of Chicago's claim, suggested by the parties, lie within the year immediately before Superintendent Tonnies' receipt of the March 23 letter. Before we answer the question whether Chicago timely made its claim against the district, there are some preliminary and more fundamental questions to be answered.

A claim must be filed with the "clerk, secretary, or other official whose duty it is to maintain the official records of the political subdivision." § 23-2404. Is Supt. Marshall Tonnies a person designated by the Political Subdivisions Tort Claims Act with whom a claim must be filed? Neither Chicago nor the district questioned the characterization of Tonnies as the district's chief executive officer "responsible for maintaining the office records of the school district," including the minutes as the district's official records reflecting action taken by the district's board at its meetings. Under the circumstances, there is no question that Superintendent Tonnies was the person charged with the responsibility of maintaining the official records of the district and, therefore, was one with whom a claim may be filed in accordance with the Political Subdivisions Tort Claims Act. See *Grams v. Independent School Dist. No. 742*, 286 Minn. 481, 176 N.W.2d 536 (1970) (filing requirement under Minnesota's governmental tort claims act satisfied by delivering notice to superintendent of the defendant school district).

The next question is: Did the attorney's letter of March 23, 1983, meet the characteristics of a "claim" under the Political Subdivisions Tort Claims Act, that is, "set forth the time and place of the occurrence giving rise to the claim and such other facts pertinent to the claim as are known to the claimant"? See § 23-2404.

Before enactment of the Political Subdivisions Tort Claims Act in 1969, this court examined the notice requirement in a statute governing a tort claim against a municipality for liability on account of a negligently defective sidewalk. In *City of Lincoln v. Pirner*, 59 Neb. 634, 81 N.W. 846 (1900), the plaintiff's notice incorrectly designated the accident site as Block 45 instead of the correct location, Block 34, although the written claim included other specific data identifying the location of the site where the plaintiff fell through a coalhole in a city sidewalk on P Street. The statute pertaining to a claim against a city for a defective sidewalk required that the claim include "a statement giving full name and the time, place, nature, circumstance, and cause of the injury or damage complained of." Comp. Stat. ch. 13a, art. 1, § 36 (1899). In

holding that plaintiff's claim was sufficient notice to the city, this court stated:

> Although the notice was ambiguous, it conveyed to the city authorities, with reasonable definiteness, a description of the place where the accident happened, and was, therefore, sufficient. It was said, in *City of Lincoln v. O'Brien, supra*, that the statute is a harsh one and should be liberally construed by the courts. The rule of construction to be deduced from the adjudged cases is that if the description given and the inquiries suggested by it will enable the agents and servants of the city to find the place where the accident occurred, there is a substantial compliance with the law. [Citations omitted.] The Carr block, according to the evidence, is a well known building on P street in the city of Lincoln, and the coal-hole described in the notice was near the west side of it. This being so, we can not believe that any person possessed of ordinary powers of perception could have failed to locate the place of the accident, if he had made an honest effort so to do. It would be a singularly heavy-witted and purblind official who, with the plaintiff's notice in his hand, could not go out and readily find the *locus in quo*.

59 Neb. at 640, 81 N.W. at 847.

Reaching a conclusion similar to that in *City of Lincoln v. Pirner, supra*, this court, in *Ruth v. City of Omaha*, 82 Neb. 846, 849, 118 N.W. 1084, 1085-86 (1908), stated: "The statutory requirements of notice to municipalities like the one at bar should be liberally construed, to the end that persons having meritorious claims may not be cut off by technicalities as to the form of notice."

In the light of decisions antedating the Political Subdivisions Tort Claims Act, it is evident that the notice required by § 23-2404 does not have to state the indicated information, circumstances, or facts with the fullness or precision required in a pleading. See *Anderson v. City of Minneapolis*, 138 Minn. 350, 165 N.W. 134 (1917). The purpose of § 23-2404 is not to require a statement of fact to the extent that the governmental subdivision's absolute liability is verbally demonstrated in the documentary or written claim. Rather, the written claim

required by § 23-2404 notifies a political subdivision concerning possible liability for its relatively recent act or omission, provides an opportunity for the political subdivision to investigate and obtain information about its allegedly tortious conduct, and enables the political subdivision to decide whether to pay the claimant's demand or defend the litigation predicated on the claim made. *Campbell v. City of Lincoln*, 195 Neb. 703, 240 N.W.2d 339 (1976).

We hold, therefore, that the notice requirements for a claim filed pursuant to the Political Subdivisions Tort Claims Act are liberally construed so that one with a meritorious claim may not be denied relief as the result of some technical noncompliance with the formal prescriptions of the act. Cf. *Ruth v. City of Omaha, supra*. See *Vermeer v. Sneller*, 190 N.W.2d 389 (Iowa 1971). Therefore, substantial compliance with the statutory provisions pertaining to a claim's content supplies the requisite and sufficient notice to a political subdivision in accordance with § 23-2404, when the lack of compliance has caused no prejudice to the political subdivision. See, *Orr v. City of Knoxville*, 346 N.W.2d 507 (Iowa 1984); *Reirdon v. Wilburton Bd. of Ed.*, 611 P.2d 239 (Okla. 1980); *Seifert v. City of Minneapolis*, 298 Minn. 35, 213 N.W.2d 605 (1973); *Galbreath v. City of Indpls.*, 253 Ind. 472, 255 N.E.2d 225 (1970); *Meredith v. City of Melvindale*, 381 Mich. 572, 165 N.W.2d 7 (1969); *Knight v. City of Los Angeles*, 26 Cal. 2d 764, 160 P.2d 779 (1945).

The attorney's letter of March 23 unequivocally referred to Stejskal as the contractor to whom Chicago had delivered materials for the "recent renovation and improvement" of the district's school at Milligan and the absence of a contractor's bond required by § 52-118. The record does not indicate that the district was involved with any contractor other than Stejskal or involved in any construction other than the window renovation at the Milligan school during August and September of 1982. The district acknowledged that Stejskal's had worked on the project, when it authorized payment for the construction and subsequently delivered its check to Stejskal on August 20, 1982. While the district suggests that Chicago's claim lacks particularity, the very acts and omission acknowledged by the

district and Superintendent Tonnies fixed and supplied any specificity of time and place regarding Chicago's claim based on the district's negligence, namely, the district's failure to obtain the statutory contractor's bond and the ensuing delivery of unpaid materials to Stejskal for the contracted window project at the school. In view of the purpose and function of the notice requirement in § 23-2404, Chicago's claim, embodied in the letter from its attorney on March 23, 1983, fulfilled the notice requirement of § 23-2404 of the Political Subdivisions Tort Claims Act and was made within 1 year after Chicago's claim had accrued. Chicago's claim was timely filed with the district, and any decision by the district court to the contrary is clearly erroneous. Also, we underscore the fact that Chicago filed its written claim against the district. Thus, we do not reach, or imply any answer to, the question whether actual knowledge of a governing body dispenses a claimant from filing a claim in compliance with the Political Subdivisions Tort Claims Act.

Concerning the district court's view that *Paxton & Vierling Iron Works v. Village of Naponee*, 107 Neb. 784, 186 N.W. 976 (1922), disposes of Chicago's claim, we have pointed out that the provisions of the Political Subdivisions Tort Claims Act apply to Chicago's negligence claim against the district. To prevail on a cause of action for negligence, a plaintiff must prove the four elements of negligence—duty, breach of duty, proximate causation, and damages. *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 412 N.W.2d 56 (1987). Although *Paxton & Vierling Iron Works v. Village of Naponee, supra*, indicates in dicta that a plaintiff must allege and, therefore, correspondingly prove that the plaintiff relied on a contractor's bond actually filed or on the belief that a contractor's bond had been filed, nonetheless, to recover under the Political Subdivisions Tort Claims Act a claimant must prove the four basic elements of negligence. See *Maple v. City of Omaha*, 222 Neb. 293, 384 N.W.2d 254 (1986).

The district court's finding that it lacked "jurisdiction" because Chicago had not timely filed its claim under the Political Subdivisions Tort Claims Act or failed to commence its action within the time prescribed by the appropriate statute of limitations is clearly erroneous. Therefore, the judgment of

the district court is reversed. Inasmuch as the district court made no finding which disposed of Chicago's claim on its merits, this matter is remanded to the district court for a disposition on the merits of Chicago's claim.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.