ROBERT J. WILLIS, APPELLANT, V. CITY OF LINCOLN, A MUNICIPAL
CORPORATION, DOING BUSINESS AS LINCOLN TRANSPORTATION
SYSTEM, APPELLEE.
441 N.W.2d 846

Filed June 16, 1989.    No. 87-825.

T.J. Hallinan and Gordon D. Ehrlich, of Law Offices of Cobb & Hallinan, P.C., for appellant.

Richard D. Sievers, of Bruckner, O'Gara, Keating, Sievers & Hendry, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

Robert J. Willis filed his negligence action against the City of Lincoln under the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 13-901 et seq. (Reissue 1987), on account of bodily injury to Willis in his wheelchair, which was being placed aboard a Lincoln Transportation System (LTS) "Handi-Van," a service supplied by the city. In its answer, the city specifically denied that Willis had satisfied the requirements for a suit under the Political Subdivisions Tort Claims Act and filed a motion for summary judgment, alleging that Willis had failed to comply with the notice requirement contained in § 13-919(1), which in part provides: "Every claim against a political subdivision permitted under this act shall be forever barred, unless within one year after such claim accrued, the claim is

made in writing to the governing body." Section 13-905 of the Political Subdivisions Tort Claims Act pertinently provides:

> All tort claims under [the Political Subdivisions Tort Claims Act] shall be filed with the clerk, secretary, or other official whose duty it is to maintain the official records of the political subdivision, or the governing body of a political subdivision may provide that such claims may be filed with the duly constituted law department of such subdivision. It shall be the duty of the official with whom the claim is filed to present the claim to the governing body.

Because Willis' appeal involves only the notice provisions of the Political Subdivisions Tort Claims Act, the circumstances around Willis' injury are but briefly mentioned. Willis alleged that on June 22, 1984, he was seated in his wheelchair and was receiving assistance from an LTS driver while boarding one of LTS' "Handi-Vans," when, due to the driver's negligence, the wheelchair tipped over backward, causing injuries to Willis' back. On the day of the accident, the LTS driver filled out a two-page "Lincoln Transportation System Onboard Accident or Incident Report," which the driver filed at the LTS office.

Shortly after Willis' accident, Joel Gray, LTS' operations and maintenance superintendent, received a copy of the van driver's report about the accident and later forwarded the report to the LTS accident review board for determination whether disciplinary action should be taken against the driver involved in the Willis accident. Howard Fletcher, risk manager for the city, received a copy of the driver's report 3 to 4 days after the accident. Fletcher's office coded the reported accident as a "possible bodily injury" claim and sent a copy of the driver's report to General Adjustment Bureau (GAB), the claims adjustment service for the company which had issued a liability policy to the city. The report on the Willis accident was then placed in the city's files with no further action anticipated.

Willis took no steps in pressing his claim against the city until March 1, 1985, when Willis' lawyer sent LTS the following letter:

Lincoln Transportation System
710 J Street
Lincoln, Nebraska 68508

Re: Robert J. Willis

Gentlemen:

Would you please have your insurance representative get in touch with me relative to the above identified individual. He was injured when he was being taken off one of your handi-buses in a wheelchair, and it was allowed to tip over backwards at which time he injured his back. This was June 22, 1984.

Thank you for the attention you will give this matter.

Very truly yours,
/s/ Kenneth Cobb

After receipt of Cobb's letter in early March of 1985, Gray called Fletcher to give Fletcher the file number assigned to the Willis accident. Gray could not recall whether he sent Fletcher a copy of Cobb's letter. The only letter received by Fletcher, who did not recall receiving a copy of Cobb's letter, was a letter on July 31, 1986, from the city attorney, which correspondence accompanied transmittal of a copy of Willis' petition filed against the city. Neither the city clerk nor the city's law department received a copy of Cobb's letter within the year after Willis' accident.

According to Cobb, sometime around April 18, 1985, an unidentified LTS employee told Cobb that Dick Knight of AID Insurance Company would be handling Willis' claim. Cobb and Knight had a number of telephone conversations during the ensuing year while Knight attempted to "find a file on the claim." On March 6, 1986, Cobb forwarded medical reports on Willis to AID Insurance, which reports AID returned to Cobb on March 24, 1986, with the notation "we are unable to locate a file." Cobb had no further contact with AID Insurance Company, but made phone calls to Gray and Fletcher, and was informed that Ed Svendsen of GAB was actually the insurance adjuster handling Willis' claim. Svendsen phoned Fletcher and Jim Faimon of the city attorney's office to determine whether Willis' written claim had been filed with the city clerk or the city

attorney within 1 year from the date of the accident. In his answers to interrogatories, Willis asserted that Svendsen denied the claim by telephone on April 16, 1986, when Svendsen stated that Willis' claim was denied because "the statute of limitations had run."

The district court determined that Willis had not complied with the notice requirements of the Political Subdivisions Tort Claims Act, granted summary judgment to the city, and dismissed Willis' action.

Willis claims that the district court erred by failing (1) to hold that Willis substantially complied with the filing requirement of § 13-905(1), (2) to estop the city from invoking the notice requirements of the Political Subdivisions Tort Claims Act, and (3) to declare the notice requirement of § 13-919(1) unconstitutional.

> A summary judgment is properly granted when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue concerning any material fact or the ultimate inferences deducible from such fact or facts and that the moving party is entitled to judgment as a matter of law. [Citations omitted.] In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. [Citation omitted.]

*Union Pacific RR. Co. v. Kaiser Ag. Chem. Co.*, 229 Neb. 160, 162-63, 425 N.W.2d 872, 875 (1988).

Willis' appeal presents no conflict in evidence regarding the recipient of Willis' written claim, or more appropriately, persons who never received Willis' claim. Notice of a claim by Willis was not filed with the city clerk or the city's law department within 1 year from the date of the accident. See §§ 13-905 and 13-919(1). Willis does not aver that his written claim was ever sent to any person designated in § 13-905.

## SUBSTANTIAL COMPLIANCE WITH NOTICE REQUIREMENTS

Willis contends that Cobb's letter to LTS constituted

substantial compliance with the notice requirements of the Political Subdivisions Tort Claims Act and, consequently, that he is entitled to maintain his action against the city. In so arguing, Willis relies in part on *Chicago Lumber Co. v. School Dist. No. 71*, 227 Neb. 355, 366, 417 N.W.2d 757, 764 (1988):

The Political Subdivisions Tort Claims Act reflects a limited waiver of governmental immunity and prescribes the procedure for maintenance of a suit against a political subdivision. [Citation omitted.] As a condition precedent to commencement of a suit brought under the Political Subdivisions Tort Claims Act, one must timely file a proper claim with the appropriate political subdivision. See, *Utsumi v. City of Grand Island*, 221 Neb. 783, 381 N.W.2d 102 (1986); *Campbell v. City of Lincoln*, 195 Neb. 703, 240 N.W.2d 339 (1976).

After holding that the plaintiff in *Chicago Lumber* had sent its "claim" to the proper person designated by the Political Subdivisions Tort Claims Act, this court considered whether the claim afforded sufficient notice to the political subdivision and stated:

In the light of decisions antedating the Political Subdivisions Tort Claims Act, it is evident that the notice required by [§ 13-905] does not have to state the indicated information, circumstances, or facts with the fullness or precision required in a pleading. [Citation omitted.] The purpose of [§ 13-905] is not to require a statement of fact to the extent that the governmental subdivision's absolute liability is verbally demonstrated in the documentary or written claim. Rather, the written claim required by [§ 13-905] notifies a political subdivision concerning possible liability for its relatively recent act or omission, provides an opportunity for the political subdivision to investigate and obtain information about its allegedly tortious conduct, and enables the political subdivision to decide whether to pay the claimant's demand or defend the litigation predicated on the claim made. [Citation omitted.]

We hold, therefore, that the notice requirements for a claim filed pursuant to the Political Subdivisions Tort

Claims Act are liberally construed so that one with a meritorious claim may not be denied relief as the result of some technical noncompliance with the formal prescriptions of the act. [Citations omitted.] Therefore, substantial compliance with the statutory provisions pertaining to a claim's content supplies the requisite and sufficient notice to a political subdivision in accordance with [§ 13-905], when the lack of compliance has caused no prejudice to the political subdivision. [Citations omitted.]

227 Neb. at 368-69, 417 N.W.2d at 765-66. See, also, *West Omaha Inv. v. S.I.D. No. 48*, 227 Neb. 785, 420 N.W.2d 291 (1988); *Franklin v. City of Omaha*, 230 Neb. 598, 432 N.W.2d 808 (1988).

Our previous decisions regarding substantial compliance with the notice provisions of the Political Subdivisions Tort Claims Act concern cases in which a political subdivision contended that the *content* of a filed claim was deficient as notice to the governmental subdivision. "[S]ubstantial compliance with the statutory provisions pertaining to a claim's content supplies the requisite and sufficient notice to a political subdivision in accordance with [§ 13-905] . . . ." *Chicago Lumber, supra* at 369, 417 N.W.2d at 766. In Willis' case, the city does not contend that the content of Cobb's letter is inadequate notice. Thus, we express no opinion whether Cobb's letter contains a "claim" in compliance with § 13-905. See, *West Omaha Inv. v. S.I.D. No. 48, supra*; *Peterson v. Gering Irr. Dist.*, 219 Neb. 281, 284, 363 N.W.2d 145, 147 (1985): "Despite plaintiffs' characterization of the document as a 'claim,' it made no demand against the district; rather, it only alerted the district to the possibility of a claim." Further, the city does not argue that Willis' claim, if filed, was not finally disposed of within 6 months after filing and was withdrawn by Willis to commence suit against the city in conformity with § 13-906 (suit permitted without governing body's final disposition of claim). Rather, the city contends, and the district court held, that the deficiency regarding Willis' claim is found in the fact that a "claim" was not filed with a recipient designated by § 13-905 pertaining to the filing of a claim

against a political subdivision.

Willis seeks extension of the substantial compliance doctrine, as such doctrine relates to the content of a written claim, to include notice of claim which has never been sent to or received by any person or entity designated by the Political Subdivisions Tort Claims Act for the filing of notice of a tort claim against a political subdivision. A notice which has been filed with a person or recipient designated by the act and which contains appropriate information to satisfy the notice requirement of the act provides a political subdivision with an opportunity to investigate, and possibly settle, a tort claim. *Chicago Lumber Co. v. School Dist. No. 71*, 227 Neb. 355, 417 N.W.2d 757 (1988). However, a notice of claim given to one who is not designated to receive notice under the Political Subdivisions Tort Claims Act may prevent a political subdivision's opportunity to investigate and settle claims inasmuch as an unauthorized recipient of notice very likely lacks power to initiate an investigation into the claim with a view toward settlement or formulation of a defense in litigation over an unsettled claim.

Therefore, we hold that for substantial compliance with the written notice requirements of the Political Subdivisions Tort Claims Act, within 1 year from the act or omission on which the claim is based, the written notice of claim must be filed with an individual or office designated in the act as the authorized recipient for notice of claim against a political subdivision. A notice of claim filed only with one unauthorized to receive a claim pursuant to § 13-905 does not substantially comply with the notice requirements of the Political Subdivisions Tort Claims Act. Willis' notice of claim, which was not sent to or received by an entity designated by § 13-905, does not substantially comply with the notice requirements of the Political Subdivisions Tort Claims Act.

## ESTOPPEL

Willis next argues that the city should be estopped from raising Willis' failure to comply with the notice requirements concerning a claim under the Political Subdivisions Tort Claims Act.

The doctrine of equitable estoppel is based on grounds of public policy and good faith, and is interposed to prevent injustice and inequitable consequences. *Koop v. City of Omaha*, 173 Neb. 633, 114 N.W.2d 380 (1962). . . .

"Ordinarily, the doctrine of equitable estoppel cannot be invoked against a municipal corporation. . . . Exceptions are made only where right and justice so demand. The doctrine is to be applied with caution and only in exceptional cases under circumstances demanding its application to prevent manifest injustice." *Christian v. Geis*, 193 Neb. 146, 149, 225 N.W.2d 868, 870 (1975). . . .

"The essential elements of equitable estoppel are: As to the party estopped, '* * * (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts.' As to the other party, '* * * (4) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (5) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (6) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.' "
*Osmera v. School Dist. of Seward*, 216 Neb. 261, 265-66, 343 N.W.2d 886, 890 (1984) (quoting *Pester v. American Family Mut. Ins. Co.*, 186 Neb. 793, 186 N.W.2d 711 (1971)). See, also, *Weiner v. Hazer*, 230 Neb. 53, 430 N.W.2d 269 (1988).

Willis does not precisely identify the city's conduct resulting in availability of the estoppel doctrine. Rather, Willis maintains that the city "took active measures to direct appellant's handling of his claim." Brief for appellant at 20. Willis' estoppel argument appears to emanate from the information, given to Cobb by an unidentified LTS employee on April 18, 1985, that Dick Knight of AID Insurance Company would act as the insurance adjuster on Willis' claim. Putting aside

questions concerning the foundational uncertainties and proof regarding the agency of the "unidentified" LTS employee, the preceding purported and incorrect information given to Cobb on April 18, 1985, had no impact whatever on the questioned notice of claim, which had been sent to LTS on March 1, 1985, approximately 6 weeks before the conduct claimed as the basis for estoppel. Assuming applicability of estoppel in Willis' case, reliance, as an element for estoppel, cannot be based on conduct or statements which occur after the alleged reliance. No one informed Willis or his lawyer that proper filing of a claim was unnecessary under the Political Subdivisions Tort Claims Act. Moreover, the Political Subdivisions Tort Claims Act contains a clear procedure for filing a tort claim against a municipality, information ostensibly possessed by Willis' lawyer. In the present case, the city was not estopped from denying Willis' compliance with the notice requirement of the Political Subdivisions Tort Claims Act.

## CONSTITUTIONALITY OF NOTICE REQUIREMENTS

Willis' final contention is that the written notice requirement of the Political Subdivisions Tort Claims Act violates the equal protection clause of the U.S. Constitution and the uniformity clause of the Nebraska Constitution by treating plaintiffs injured by political subdivisions differently from those injured by private tort-feasors. See, U.S. Const. amend. XIV; Neb. Const. art. III, § 18. Willis urges reconsideration of our holding in *Campbell v. City of Lincoln*, 195 Neb. 703, 240 N.W.2d 339 (1976), where this court held that the notice requirements of the Political Subdivisions Tort Claims Act did not violate aforementioned constitutional guarantees or protection.

In the absence of interference with a "fundamental right" or discrimination against a "suspect" class, a classification within or by a statute and resultant disparate treatment or effect on similarly situated individuals will be upheld against an "equal protection attack" if the classification is rationally related to a legitimate governmental purpose. *Kadrmas v. Dickinson Public Schools*, ____ U.S. ____, 108 S. Ct. 2481, 101 L. Ed. 2d 399 (1988); *School Dist. No. 46 v. City of Bellevue*, 224 Neb.

543, 400 N.W.2d 229 (1987); *Farm Bureau Life Ins. Co. v. Luebbe,* 218 Neb. 694, 358 N.W.2d 754 (1984). The classification at issue in Willis' case, namely, a claimant against a nongovernmental tort-feasor vis-a-vis a claimant against a political subdivision as a governmental tort-feasor, does not involve a suspect class or a fundamental right and, therefore, must be upheld if the classification bears some rational relation to a legitimate governmental purpose. *Day v. Memorial Hosp. of Guymon,* 844 F.2d 728 (10th Cir. 1988); *Lacey v. Bekaert Steel Wire Corp.,* 799 F.2d 434 (8th Cir. 1986); *Campbell v. City of Lincoln, supra.*

> The constitutional safeguard [equal protection clause of the 14th amendment to the U.S. Constitution] is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

*McGowan v. Maryland,* 366 U.S. 420, 425-26, 81 S. Ct. 1101, 6 L. Ed. 2d 393 (1961). See, also, *Kadrmas v. Dickinson Public Schools, supra; Farm Bureau Life Ins. Co. v. Luebbe, supra.*

In *Campbell v. City of Lincoln, supra,* this court rejected constitutional attacks on the notice requirements of the Political Subdivisions Tort Claims Act, attacks which were based on denial of equal protection guaranteed by the 14th amendment to the U.S. Constitution and uniformity guaranteed by article III, § 18, of the Nebraska Constitution, stating:

> The plaintiff contends that the act is unreasonable and does not operate uniformly because it puts persons injured by governmental torts in a different class than those injured by private torts, and imposes special notice requirements and limitations of actions for claims against governmental subdivisions to which tort[6] claims against private persons are not subject.
>
> The act creates one single class of tort-feasors — all political subdivisions — which includes "villages, cities of

all classes, counties, school districts, public power districts, and all other units of local government." The act applies equally and uniformly to all tort claims against a political subdivision. The fact that public agencies, generally speaking, differ from private persons or corporations in many respects is obvious. Under many circumstances that difference has been held to be sufficient in itself to afford a proper subject for legislative classification. . . .

The taxpaying public has an interest in seeing that prompt and thorough investigation of claims is made where a political subdivision is involved. The public does not have such an interest as to claims against private persons or corporations. The taxpayers who provide the public treasury with funds have an interest in protecting that treasury from stale claims. That interest may well be intensified where the political subdivision has not been protected by insurance. It is clear under the act that while the procurement of insurance coverage is authorized, it is not required, and there are provisions for loans by the State Treasurer to a political subdivision in the event insufficient funds are available to pay awards or judgments under the act. The Nebraska Political Subdivisions Tort Claims Act, in creating a special class of tort-feasors consisting of all political subdivisions as defined, does not violate Article III, section 18, of the Nebraska Constitution. . . .

The requirement of notice imposed by the act is a factor here only with respect to activities previously classified as proprietary. This court long ago held that the primary purpose of notice provisions in connection with actions against political subdivisions was "to afford to the municipal authorities prompt notice of the accident and injury in order that an investigation may be made while the occurrence is still fresh and the municipal authorities placed in a position to intelligently consider the claim, allow it if deemed just, or in the alternative to adequately protect and defend the public interest." Bethscheider v. City of Hebron, 137 Neb. 909, 291 N.W. 684. See, also,

Knapp v. City of Omaha, 172 Neb. 78, 108 N.W.2d 419.

Other courts, under similar or related circumstances, have held that notice requirements as conditions precedent to suit against a municipal corporation are not unreasonable and unconstitutional, even though no notice is required in suits against private corporations for similar tort claims.

*Campbell v. City of Lincoln*, 195 Neb. 703, 709-11, 240 N.W.2d 339, 342-43 (1976).

Willis cites cases from other jurisdictions which have struck down the written notice requirement in a statute authorizing a tort claim against a political subdivision of the state; for example, *Miller v. Boone County Hospital*, 394 N.W.2d 776 (Iowa 1986), where the Supreme Court of Iowa expressed:

Failure to commence an action within six months unless a notice is given within 60 days arbitrarily bars victims of governmental torts while victims of private torts suffer no such bar. We conclude such arbitrary treatment violates the equal protection guarantees of our federal and state constitutions.

394 N.W.2d at 780.

Although we have examined the authorities mentioned by Willis to support his constitutional attacks on the notice requirement of the Political Subdivisions Tort Claims Act, we find *Day v. Memorial Hosp. of Guymon*, 844 F.2d 728 (10th Cir. 1988), persuasive constitutional justification for the notice requirement concerning a tort claim against a governmental body or entity:

Notice of claim provisions have been found to serve several legitimate state interests. Most commonly the statutes are said to allow: a prompt investigation while the evidence is still fresh; the opportunity to repair or remedy dangerous conditions; quick and amicable settlement of meritorious claims; and preparation of fiscal planning to meet any possible liability. [Citation omitted.] Other purposes include the discouragement of unfounded claims, minimizing the amount of damages and litigation costs, and allowing continued provision of local services and the maintenance of fiscal stability. [Citations

omitted.] These are legitimate governmental interests which conceivably promote the general welfare by ensuring the stability of government entities. Tort claims against the government have the potential to affect the orderly provision of necessary services to the general public. Given these factors, it cannot be said that the enactment of the notice requirement was an irrational means of pursuing legitimate state objectives. [Citation omitted.] The requirement that tort victims give notice to the government . . . may serve to reduce spurious claims and to allow the government to prepare its defense. Such a provision may further ensure that the proper officials are notified of dangerous conditions and are aware of their duty to act.

844 F.2d at 731.

Thus, we conclude that the notice of claim requirement contained in the Political Subdivisions Tort Claims Act is relevant and related to a legitimate governmental purpose. Requiring a tort claim-notice to be filed with appropriate governmental authority allows a political subdivision with a wide range of activities to consolidate responsibility concerning investigation and settlement of claims against the political subdivision and thereby reduce exposure to expensive litigation. A notice of claim requirement also alerts a political subdivision to dangerous activities which may continue undetected in the absence of such notice, that is, until commencement of litigation. Requiring notice within 1 year after a claim's accrual assures that the subdivision will be able to conduct an investigation when the occurrence is still reasonably current or fresh in the minds of observers, and may provide the political subdivision with an early opportunity to remedy a situation dangerous to the public and avoid similar future claims. While all the foregoing concerns may also exist to some extent regarding claims against nongovernmental tort-feasors, those concerns are particularly compelling in reference to claims against political subdivisions, whose services are frequently essential to the public safety and welfare. As a result, the economic stability of Nebraska's political subdivisions, potentially jeopardized by numerous tort claims difficult to

investigate or disprove, is a matter of substantial interest to the people and taxpayers of the political subdivision.

A requirement that a political subdivision be notified of any tort claim within 1 year after a claim's accrual is not irrationally or unreasonably related to the protection of important public interests. See *Day v. Memorial Hosp. of Guymon, supra.* We, therefore, reaffirm our conclusion in *Campbell* and hold that the notice of claim requirement of the Political Subdivisions Tort Claims Act does not violate the uniformity clause of the Nebraska Constitution or the equal protection clause of the U.S. Constitution.

The district court committed no error when it granted summary judgment to the city and dismissed Willis' action. Therefore, the decision of the district court is affirmed.

AFFIRMED.