LORI A. SCHOEMAKER, APPELLANT, V. METROPOLITAN UTILITIES DISTRICT AND DENNIS M. JOHNSON, APPELLEES.

515 N.W.2d 675

Filed May 20, 1994.    No. S-92-1023.

· Dean J. Jungers, of Hascall, Jungers, Garvey & Delaney, for appellant.

Ronald E. Bucher for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

HASTINGS, C.J.

Lori A. Schoemaker appeals the order of the district court, which, in her claim against the Metropolitan Utilities District, found that she had failed to satisfy the requirements of the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-901 et seq. (Reissue 1987), and sustained the defendants' motion for summary judgment. We affirm.

In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Hillie v. Mutual of Omaha Ins. Co., ante* p. 219, 512 N.W.2d 358 (1994); *VonSeggern v. Willman*, 244 Neb. 565, 508 N.W.2d 261 (1993).

As alleged in the petition, Schoemaker and defendant Dennis M. Johnson were involved in an automobile collision on August 22, 1989. At the time of the collision, Johnson was allegedly engaged in the course of his employment with defendant Metropolitan Utilities District (MUD) and was operating a motor vehicle owned by MUD.

MUD's claims adjuster, Delores Kocourek, was notified of the accident by employees and went to the scene to investigate. Schoemaker had already left the scene; however, the MUD driver and safety director and the police were still there. Kocourek spoke with them and gathered as much information as she could. She attempted to contact Schoemaker later that day, but was unable to do so. Kocourek stated that she believed that Schoemaker's father contacted the MUD safety director the next day. Kocourek was also able to contact Schoemaker that day, August 23. Schoemaker's father called Kocourek on August 24 and again on August 28; automobile repairs and Schoemaker's injuries were discussed. On September 11, Kocourek sent a letter to Schoemaker in which she requested that Schoemaker contact the MUD office as soon as the automobile repairs were completed so that arrangements could be made to issue a check. The letter also asked that Schoemaker

sign a medical authorization form.

Kocourek's records indicated that Schoemaker's father made contact with Don Blocker, the MUD claims investigator, on September 12. Kocourek testified that when Blocker talked to Schoemaker's father, "that's when he said that he had hired an attorney and that's when we broke off all of our contacts with them." Kocourek's records indicated that Blocker spoke with Schoemaker's attorney on September 12 as well.

Kocourek received a letter dated October 25, 1990, from Schoemaker's attorney advising her of special damages. This letter was the first correspondence which Kocourek received from either Schoemaker or her attorney. In a letter to Schoemaker's attorney dated November 13, 1990, Kocourek acknowledged the October 25 correspondence and asked for further information before the claim could be considered. Schoemaker's attorney faxed some bills to Kocourek after November 13. The next contact was from Schoemaker's attorney to Kocourek on July 16, 1991, when, according to Kocourek, the attorney stated that he "wanted to get something going on the claim." The last contacts and requests for documentation between Kocourek and Schoemaker's attorney apparently took place in August 1991. This action was filed on August 21, 1991.

In their answer, the defendants denied that Schoemaker's claim had been acknowledged on September 11, 1989. The defendants were granted leave to file an amended answer on June 19, 1992. In the amended answer, they alleged that Schoemaker had failed to comply with the notice requirements of § 13-905 and that the action was barred by the statute of limitations found in §§ 13-919(1) and 13-920(1) and (3). The defendants' motion for summary judgment was sustained by the district court on October 27, 1992. Schoemaker asserts that the court erred in finding that she had not complied with § 13-905 and in finding that the defendants had not acknowledged or waived the requirements of § 13-901 et seq.

"The Political Subdivisions Tort Claims Act reflects a limited waiver of governmental immunity and prescribes the procedure for maintenance of a suit against a political subdivision." *Chicago Lumber Co. v. School Dist. No. 71*, 227

Neb. 355, 366, 417 N.W.2d 757, 764 (1988). Section 13-905 of the act states:

> All tort claims under sections 13-901 to 13-926, 16-727, 16-728, 23-175, 39-809, and 79-489 shall be filed with the clerk, secretary, or other official whose duty it is to maintain the official records of the political subdivision, or the governing body of a political subdivision may provide that such claims may be filed with the duly constituted law department of such subdivision. It shall be the duty of the official with whom the claim is filed to present the claim to the governing body. *All such claims shall be in writing* and shall set forth the time and place of the occurrence giving rise to the claim and such other facts pertinent to the claim as are known to the claimant.

(Emphasis supplied.) Section 13-919(1) provides, in pertinent part, that "[e]very claim against a political subdivision permitted under [the Political Subdivisions Tort Claims Act] shall be forever barred unless within *one year* after such claim accrued, *the claim is made in writing* to the governing body." (Emphasis supplied.)

In *Miles v. Box Butte County*, 241 Neb. 588, 598, 489 N.W.2d 829, 837 (1992), we stated:

> Noncompliance with the notice requirement is a defense to a plaintiff's action. If a political subdivision, by an appropriately specific allegation in a demurrer or answer, raises the issue of a plaintiff's failure to comply with the notice requirement of § 13-905, the plaintiff then has the burden to show compliance with the notice requirement. *Millman v. County of Butler*, 235 Neb. 915, 458 N.W.2d 207 (1990). However, a general denial in the political subdivision's answer does not raise the issue of noncompliance, which must be raised as an affirmative defense specifically expressing the plaintiff's noncompliance with the notice requirement of § 13-905 of the Political Subdivisions Tort Claims Act. *Id.*

Schoemaker asserts that the defendants' answer did not raise any question concerning compliance with § 13-905. However, as noted above, the district court granted the defendants leave to file an amended answer, in which they did allege that the

plaintiff had failed to comply with the notice requirements of § 13-905 and that the action was barred by the statute of limitations found in §§ 13-919(1) and 13-920(1) and (3). Thus, Schoemaker had the burden to show compliance with the notice requirement.

Although Schoemaker acknowledges that she did not file a written claim within 1 year, she contends that the combination of the oral claim, in conjunction with the written acknowledgment of the claim in the September 11, 1989, letter of Kocourek, constituted compliance with the requirements of § 13-901 et seq., as set forth in *West Omaha Inv. v. S.I.D. No. 48*, 227 Neb. 785, 420 N.W.2d 291 (1988), and *Chicago Lumber Co. v. School Dist. No. 71, supra*.

In *West Omaha Inv.*, we noted that the act does not mandate that a claim contain the amount of damages or loss, but that it must contain only the " 'time and place of the occurrence giving rise to the claim and such other facts pertinent to the claim as are known to the claimant.' " *Id.* at 790, 420 N.W.2d at 295. We found that while the plaintiff's letter to the defendant did not specify an exact dollar amount, it did state that property loss had occurred and that the defendant was responsible. The plaintiff's letter also stated that "claim is made" against the defendant and was, therefore, not merely notice of the "possibility of a claim."

In *Chicago Lumber Co.*, we held that notice requirements for a claim filed pursuant to the act are to be liberally construed so that one with a meritorious claim may not be denied relief as the result of some technical noncompliance, stating: "[S]ubstantial compliance with the statutory provisions pertaining to a claim's content supplies the requisite and sufficient notice to a political subdivision in accordance with [§ 13-905], when the lack of compliance has caused no prejudice to the political subdivision." 227 Neb. at 369, 417 N.W.2d at 766. In that case, we found that a letter from the plaintiff's attorney to the defendant, which letter did not specify an exact time and place of occurrence, was nevertheless sufficient to satisfy the notice requirements of the act, where the defendant was familiar with the circumstances of the claim.

Schoemaker apparently relies on the "substantial

compliance" doctrine, as set forth in *Chicago Lumber Co.*, in arguing that the *defendant's* letter of September 11, 1989, is sufficient written notice of a claim. However, as explained above, both *West Omaha Inv.* and *Chicago Lumber Co.* discussed substantial compliance in regard to the content of a written claim by the plaintiff, not the *absence* of a written claim by the plaintiff.

In *Chicago Lumber Co.*, we noted that the purpose of the written claim requirement of § 23-2404 (now § 13-905) is to notify a political subdivision concerning possible liability for its relatively recent act or omission, providing an opportunity for the political subdivision to investigate and obtain information about its allegedly tortious conduct, and enabling the political subdivision to decide whether to pay the claimant's demand or defend the litigation predicated on the claim made. Schoemaker argues that the failure to file a written claim did not cause the defendant any prejudice in its investigation or handling of the claim, since the defendant had access to the scene of the accident shortly after the accident.

In *Willis v. City of Lincoln*, 232 Neb. 533, 441 N.W.2d 846 (1989), the plaintiff also sought to extend the "substantial compliance" doctrine, as it related to the content of a written claim, to include notice of a claim which had not been sent to or received by a person or entity designated by the act. The plaintiff was allegedly injured while being placed aboard a Lincoln Transportation System (LTS) "Handi-Van" by the driver. The driver filled out a two-page accident report on the day of the accident. Approximately 8 months later, the plaintiff's attorney sent a letter to LTS, requesting that its insurance representative "get in touch" relative to the plaintiff's injuries. While expressing no opinion on whether the letter contained a "claim" in compliance with § 13-905, we held:

> [F]or substantial compliance with the written notice requirements of the Political Subdivisions Tort Claims Act, within 1 year from the act or omission on which the claim is based, the *written notice* of claim must be filed with an individual or office designated in the act as the authorized recipient for notice of claim against a political subdivision.

(Emphasis supplied.) 232 Neb. at 539, 441 N.W.2d at 850. In *Willis*, the LTS operations and maintenance superintendent, and the city risk manager, were both aware of the accident shortly after it occurred, due to the driver's written report. Eight months later, the superintendent apparently received the attorney's letter and called the city risk manager to give him the file number assigned to the plaintiff's accident. However, neither the city clerk nor the city's law department received a copy of the letter within the year after the accident. Although the driver notified LTS of the accident on the day that it occurred, and there was correspondence between the plaintiff's attorney and LTS, we found that the plaintiff's notice of claim, which was not received by an individual or entity designated as an authorized recipient by § 13-905, did not substantially comply with the notice requirements of the act.

Here, as in *Willis*, employees of the political subdivision had knowledge of the accident and of the possibility of a claim. In her letter of September 11, 1989, Kocourek did indicate her awareness of the time and place of the accident. Kocourek's records reflect that MUD learned on September 12 that Schoemaker had hired an attorney and that MUD subsequently broke off further contacts with Schoemaker and her father. The next contact reflected in the record in regard to a claim is the letter dated October 25, 1990, from Schoemaker's attorney to Kocourek. This letter does not satisfy the requirements of § 13-919(1), since it was not received within 1 year after the claim accrued, nor was notice ever given to an authorized "other official" as required by § 13-905.

Section 13-905 requires notice to a designated individual or entity of a political subdivision in the form of a written claim. It would defeat the purpose of § 13-905 if mere knowledge of an act or omission, by a nondesignated party, was sufficient to satisfy the requirements of that section.

Schoemaker further argues that the defendants waived the requirement of a written claim by virtue of the contents of the letter of September 11, 1989; Kocourek's continued investigation of the accident; and the failure of the defendants to raise the issue of compliance in their first answer. Kocourek testified that her job involved gathering information and

getting the files together, but that the general counsel or the general manager made the actual decision in regard to a claim. She stated: "I will discuss the settlement and then I will take whatever recommendation or whatever has been discussed back in to the general counsel for his approval. I don't have the authority to settle a case." While Kocourek apparently did not alone possess the authority to settle the claim, her letter does imply that a settlement would be made upon the receipt of further information and a signed property damage release. However, since the settlement appears to be predicated on the receipt of these items, it is not an unequivocal assurance of payment. Kocourek also testified that she did not advise Schoemaker, Schoemaker's father, or Schoemaker's attorney that it was unnecessary to file a written claim and that she did not know of anyone else who advised them that it was unnecessary. In *Five Points Bank v. Scoular-Bishop Grain Co.*, 217 Neb. 677, 681, 350 N.W.2d 549, 552 (1984), we stated that "ordinarily, to establish waiver of a legal right there must be a clear, unequivocal, and decisive act of a party showing such a purpose, or acts amounting to an estoppel on his part."

In *Willis v. City of Lincoln*, 232 Neb. 533, 441 N.W.2d 846 (1989), the plaintiff argued that the city should be estopped from raising the issue of his failure to comply with the notice requirements of the act. In *Willis*, we found that the plaintiff's reliance could not be based on conduct or statements which occur after the alleged reliance. In this case, Schoemaker cannot rely, as an element of estoppel or waiver, on Kocourek's actions in communicating with Schoemaker's attorney after the statute of limitations had expired. In *Willis*, we further noted that the Political Subdivisions Tort Claims Act contains a clear procedure for filing a tort claim against a municipality, which information was ostensibly possessed by the plaintiff's lawyer, and that, as in the instant case, no one had informed the plaintiff or his attorney that the filing of a claim was unnecessary.

Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from

those facts and that the moving party is entitled to judgment as a matter of law. *Hillie v. Mutual of Omaha Ins. Co., ante* p. 219, 512 N.W.2d 358 (1994); *Plambeck v. Union Pacific RR. Co.*, 244 Neb. 780, 509 N.W.2d 17 (1993).

The record reflects that Schoemaker has failed to establish compliance with the notice requirements of § 13-905 and that the defendants did not unequivocally waive the notice requirements of that section; summary judgment was therefore properly granted and is affirmed.

AFFIRMED.