Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/10/2020 04:10 PM CDT

James Saylor, appellant,
v. State of Nebraska
et al., appellees.

___ N.W.2d ___

Filed June 19, 2020.    No. S-18-794.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Tort Claims Act: Political Subdivisions Tort Claims Act: Appeal and Error.** Where the relevant facts are undisputed, whether the notice requirements of the State Tort Claims Act or the Political Subdivisions Tort Claims Act have been satisfied is a question of law, on which an appellate court reaches a conclusion independent of the lower court's ruling.

4. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.

5. **Administrative Law.** Agency regulations that are properly adopted and filed with the Secretary of State have the effect of statutory law.

6. **Political Subdivisions Tort Claims Act: Notice.** In cases under the Political Subdivisions Tort Claims Act, the substantial compliance doctrine applies when deciding whether the content of a claim satisfies the presuit claim presentment requirements in Neb. Rev. Stat. § 13-905 (Reissue 2012).

7. ____: ____. Substantial compliance with the statutory provisions pertaining to a claim's content supplies the requisite and sufficient notice

to a political subdivision in accordance with the Political Subdivisions Tort Claims Act when the lack of compliance has caused no prejudice to the political subdivision.

8. **Tort Claims Act: Political Subdivisions Tort Claims Act.** Generally, provisions of the State Tort Claims Act should be construed in harmony with similar provisions under the Political Subdivisions Tort Claims Act.

9. ____: ____. Under the State Tort Claims Act, when a question is raised about whether the content of a presuit tort claim complied with the manner in which the State Claims Board prescribed such claims to be filed, the substantial compliance doctrine may be applied, just as it is applied under the Political Subdivisions Tort Claims Act.

10. ____: ____. Under both the State Tort Claims Act and the Political Subdivisions Tort Claims Act, application of the substantial compliance doctrine is limited to the content of a presuit claim. The doctrine of substantial compliance does not apply when considering whether a presuit tort claim has complied with statutory timing requirements or whether it has been served on the recipient described in the statute.

11. **Tort Claims Act: Political Subdivisions Tort Claims Act: Notice.** Under both the State Tort Claims Act and the Political Subdivisions Tort Claims Act, application of the doctrine of substantial compliance is confined to situations where the content of the tort claim nevertheless satisfies the primary purpose of the presuit notice requirements by notifying the state or political subdivision about possible tort liability for a recent act or omission so it may investigate and make a decision whether to pay or defend the claim.

Appeal from the District Court for Lancaster County: Robert R. Otte, Judge. Reversed and remanded for further proceedings.

Michael J. Wilson, of Berry Law Firm, for appellant.

Douglas J. Peterson, Attorney General, Scott R. Straus, and, on brief, David A. Lopez, Deputy Solicitor General, for appellee State of Nebraska.

Miller-Lerman, Cassel, Stacy, and Funke, JJ.

Stacy, J.

James Saylor, an inmate at the Nebraska Department of Correctional Services (DCS), appeals from an order dismissing

his lawsuit under the Nebraska State Tort Claims Act (STCA),[1] based on a finding that Saylor failed to comply with the pre-suit filing requirements of the STCA.[2] Because we find Saylor substantially complied with those requirements, we reverse, and remand for further proceedings.

BACKGROUND

Tort claims against the State are governed by the STCA.[3] This case requires us to focus on the presuit administrative requirements of the STCA. Before suit can be commenced under the STCA, a claimant must present the claim in writing to the Risk Manager for the State Claims Board within 2 years after the claim accrued.[4] Pursuant to § 81-8,212, such claim "shall be filed with the Risk Manager in the manner prescribed by the State Claims Board." Generally speaking, a claimant cannot file suit under the STCA until the Risk Manager or State Claims Board makes a final disposition of the claim.[5] However, if no final disposition of a claim has been made after 6 months, § 81-8,213 authorizes the claimant to withdraw the claim and commence an action under the STCA.[6]

We have described the presuit claim presentment requirement in § 81-8,212 and the final disposition requirement in § 81-8,213 as procedural conditions precedent to commencing a tort action against the State in district court, and not as jurisdictional prerequisites for the adjudication of a tort claim against the State.[7] Noncompliance with these procedural

---

[1] Neb. Rev. Stat. §§ 81-8,209 to 81-8,235 (Reissue 2014 & Cum. Supp. 2018).

[2] See § 81-8,212.

[3] *Komar v. State*, 299 Neb. 301, 908 N.W.2d 610 (2018).

[4] See, § 81-8,227(1); *Komar, supra* note 3.

[5] § 81-8,213; *Komar, supra* note 3.

[6] *Komar, supra* note 3.

[7] See *Cole v. Isherwood*, 264 Neb. 985, 653 N.W.2d 821 (2002) (superseded by rule on other grounds as stated in *Weeder v. Central Comm. College*, 269 Neb. 114, 691 N.W.2d 508 (2005)).

conditions precedent is considered an affirmative defense to be raised by the State.[8] We apply the same rules to the presuit claim presentment and final disposition procedures under the Political Subdivisions Tort Claims Act (PSTCA).[9] Under both the STCA and the PSTCA, the primary purpose of the presuit claim presentment procedures is the same: to notify the state or political subdivision about possible tort liability for a recent act or omission, to provide an opportunity to investigate the allegedly tortious conduct, and to enable the state or political subdivision to make a decision whether to pay or defend the claim.[10]

### Saylor Files Tort Claims With Risk Manager

Between June 12, 2016, and February 23, 2017, Saylor filed 16 separate tort claims with the Risk Manager.[11] Pursuant to § 81-8,212 of the STCA, these claims had to "be filed with the Risk Manager in the manner prescribed by the State Claims Board." Saylor filed all 16 of his claims using the standard form provided by the Risk Manager. Each claim form contained 18 fields requesting information regarding the claim. Some fields were marked with an asterisk indicating it was a "required" field. Further, each form contained a blank area with the following instructions:

> Provide detailed itemization of all known facts/ circumstances/damages leading to your claim. Identify all property, places, and people involved. Include names,

---

[8] *Id.*

[9] Neb. Rev. Stat. §§ 13-901 to 13-928 (Reissue 2012 & Cum. Supp. 2018). See, e.g., *Geddes v. York County*, 273 Neb. 271, 729 N.W.2d 661 (2007); *Big Crow v. City of Rushville*, 266 Neb. 750, 669 N.W.2d 63 (2003); *Jessen v. Malhotra*, 266 Neb. 393, 665 N.W.2d 586 (2003); *Millman v. County of Butler*, 235 Neb. 915, 458 N.W.2d 207 (1990) (superseded by rule on other grounds as stated in *Weeder, supra* note 7).

[10] See, *Cole, supra* note 7; *Chicago Lumber Co. v. School Dist. No. 71*, 227 Neb. 355, 417 N.W.2d 757 (1988).

[11] See § 81-8,212.

     addresses and phone numbers of witnesses, if any. The information provided herein, along with the findings of the investigating agency, will form the basis of any decision.

In this section, most of Saylor's claim forms described instances in which he claimed the actions of DCS or its employees either denied him timely medical care, aggravated his existing post-traumatic stress disorder, or deprived him of the use of devices that eased his pain. In a few claim forms, Saylor alleged DCS staff deprived him of the use of certain legal materials in his possession or interfered with his ability to meet with his attorney. Saylor generally stated that all these things caused him physical and emotional pain and suffering.

On each form, Saylor provided information in all required fields. One of the required fields, field No. 9, was titled "Total Amount of Claim." When completing field No. 9 on each claim form, Saylor wrote "[t]o be proven" without specifying a dollar amount.

The Risk Manager, in a series of letters, acknowledged receiving all of Saylor's claims. Those letters notified Saylor of the claim numbers assigned to his claims and advised it may take up to 6 months to receive final disposition. None of the letters indicated the claim forms were incomplete, and there is no evidence that additional information was requested from Saylor during the Risk Manager's investigation. The parties generally agree the Risk Manager denied Saylor's tort claims in a series of letters dated June 15, 2017. Those denial letters indicated that upon investigating the claims, "it was determined that there is no evidence of staff misconduct or negligence."

## Complaint and Motion for
## Summary Judgment

On June 16, 2017, Saylor filed a complaint in district court against the State of Nebraska, DCS, and 10 unnamed DCS employees (the State). He thereafter filed an amended

complaint, styled as 16 separate causes of action, each one premised on a tort claim previously submitted to and denied by the Risk Manager. The State moved to dismiss the amended complaint for failure to state a claim.[12] The parties stipulated to the receipt of evidence and agreed the motion should be treated as one for summary judgment.[13]

The State's sole argument for summary judgment was that Saylor failed to satisfy the claim presentment provisions of § 81-8,212 with respect to his claimed damages. The State asserted, summarized, that § 81-8,212 requires all tort claims to be filed "in the manner prescribed by the State Claims Board" and that regulations adopted by the State Claims Board[14] require all claims to "contain all information called for" on the claim form.[15] The State argued that Saylor's claims did not "contain all information called for" on the form because he did not specify a dollar amount in field No. 9. In remarks to the court, the State suggested there were other possible deficiencies in Saylor's tort claims, but in the interest of time, it had elected to seek dismissal only on the basis that no dollar amount was specified in field No. 9. The district court limited its analysis accordingly.

## District Court Order

The district court agreed with the State that by not specifying a dollar amount in field No. 9, Saylor had not filed his claim in the manner prescribed by the State Claims Board, and that therefore, he had not complied with § 81-8,212. The court expressly rejected Saylor's assertion that the State waived its right to contest compliance with the claims procedure under § 81-8,212 by accepting his claim forms, sending him letters acknowledging receipt and assigning claims numbers, and then denying the claims on their merits.

---

[12] See Neb. Ct. R. Pldg. § 6-1112(b)(6).

[13] § 6-1112(b).

[14] See § 81-8,221.

[15] Neb. Admin. Code, State Claims Board, rule No. 12 (1975).

The district court granted the State's motion for summary judgment and dismissed Saylor's amended complaint with prejudice. Saylor timely appealed, and we moved the case to our docket on our own motion.

ASSIGNMENTS OF ERROR

Saylor assigns, restated, that the district court erred in granting the State's motion for summary judgment because (1) Saylor's tort claim forms provided the requested information and substantially complied with the presuit requirements of the STCA and (2) the State waived any challenge to compliance with requested information on the tort claim forms.

STANDARD OF REVIEW

[1,2] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[16] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.[17]

[3] Where the relevant facts are undisputed, whether the notice requirements of the STCA or the PSTCA have been satisfied is a question of law, on which an appellate court reaches a conclusion independent of the lower court's ruling.[18]

[4] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an

---

[16] *JB & Assocs. v. Nebraska Cancer Coalition*, 303 Neb. 855, 932 N.W.2d 71 (2019).

[17] *Id.*

[18] *Estate of McElwee v. Omaha Transit Auth.*, 266 Neb. 317, 664 N.W.2d 461 (2003).

independent conclusion irrespective of the decision made by the court below.[19]

## ANALYSIS

The sole issue on appeal is whether the district court erred in dismissing Saylor's STCA action for failure to comply with the presuit claim presentment requirement of § 81-8,212. As stated, that statute requires, in relevant part, that "[a]ll tort claims shall be filed with the Risk Manager *in the manner prescribed* by the State Claims Board."[20]

The State Claims Board has adopted rules and regulations that prescribe not only the manner of filing a tort claim, but also the form and content of such claims. Assuming without deciding that the statutory authority to prescribe the "manner" of filing tort claims with the Risk Manager includes prescribing the form and content of such claims, we summarize, in the next section, the pertinent regulations adopted by the State Claims Board.

[5] A certified copy of those regulations was received into evidence at the summary judgment hearing. It showed the regulations were adopted in 1975 and have not been amended since that time. It also showed the regulations have been signed and approved by the Governor and the Attorney General, as well as filed with the Secretary of State. We have held that agency regulations that are properly adopted and filed with the Secretary of State have the effect of statutory law.[21]

### State Claims Board Rules
### and Regulations

Regarding the manner of filing a tort claim, the regulations require it "shall be filed in triplicate with the Secretary of the Board, State Capitol Building, State House Station, Lincoln,

---

[19] *JB & Assocs., supra* note 16.

[20] § 81-8,212 (emphasis supplied).

[21] *Val-Pak of Omaha v. Department of Revenue*, 249 Neb. 776, 545 N.W.2d 447 (1996).

Nebraska, 68509."[22] Regarding the form of filing a tort claim, the regulations require that it "should be typewritten and upon a form provided by the Board, but claims printed by hand upon the Board's form will be accepted if legible."[23] And regarding the content of a tort claim, the regulations require that "[a]ll claims shall contain all information called for on the Board's 'Claim for Injury or Damage' form, including the instructions printed on the back of the blue sheet of the form set, and also such other information as is pertinent to the claim."[24]

Also received into evidence was a certified copy of a document titled "Standard Operating Procedures: How to File a Tort Claim Against the State of Nebraska." According to the certificate, these operating procedures are available online and were created by the State's risk management division of the Department of Administrative Services. Unlike properly adopted administrative regulations, an agency's operating procedures do not have the force and effect of law.[25]

As relevant to the issues on appeal, the Risk Manager's operating procedures contain instructions regarding which form to use when filing a tort claim, how to complete the form, and how to file the form once completed. These instructions differ from the State Claims Board's regulations in several key respects. Specifically, the Risk Manager's instructions do not reference the "Claim for Injury or Damage" form required by the regulations, and instead, they direct that a "Tort & Miscellaneous Claim Form" be completed. The Risk Manager's instructions do not direct that the claim form be filed in triplicate with the secretary of the State

---

[22] Neb. Admin Code, State Claims Board, rule No. 6 (1975).

[23] Neb. Admin Code, State Claims Board, rule No. 7 (1975).

[24] Rule No. 12, *supra* note 15.

[25] See, e.g., *Reed v. State*, 272 Neb. 8, 717 N.W.2d 899 (2006) (in contrast to agency regulations, agency manuals and guidelines lack force of law and do not warrant deference).

Claims Board as required by the regulations, but instead, they direct that the form should be submitted electronically to "as.riskmanagement@nebraska.gov" or mailed to the "Office of Risk Management" at a specific post office box in Lincoln. The Risk Manager's operating procedures also provide that "[o]nly fully completed and signed Tort Claim Forms will be accepted by the office of Risk Management." It is undisputed that all of Saylor's tort claims were accepted by the Risk Manager and that all were presented using the "Tort & Miscellaneous Claim Form."

## Arguments of Parties

After Saylor commenced his tort action in district court, the State sought dismissal based on a single affirmative defense: that Saylor's presuit tort claims were deficient because when he answered field No. 9, asking for the "Total Amount of Claim," he did not provide a dollar amount, and instead stated "[t]o be proven." The State contends that because the answer to field No. 9 did not reference a dollar amount, the forms did not "contain all information called for,"[26] and that thus, the claims were not filed "in the manner prescribed by the State Claims Board" as required by § 81-8,212. The State also asserts, as it did before the trial court, that the substantial compliance doctrine which this court has applied when reviewing the content of presuit claims under the PSTCA[27] should not be applied under the STCA. The State argues, summarized, that the substantial compliance doctrine is inconsistent with the principle that "requirements of the [STCA] must be followed strictly."[28]

---

[26] Rule No. 12, *supra* note 15.

[27] See, e.g., *Jessen, supra* note 9; *West Omaha Inv. v. S.I.D. No. 48*, 227 Neb. 785, 420 N.W.2d 291 (1988); *Chicago Lumber Co., supra* note 10.

[28] See *Jill B. & Travis B. v. State*, 297 Neb. 57, 69, 899 N.W.2d 241, 252 (2017).

Saylor contends that even though his answer to field No. 9 was not stated in dollars, he nevertheless provided "all information called for"[29] on the standard form, and that he thus substantially complied with the provisions of § 81-8,212. He also argues it was impossible for him to strictly comply with the "manner prescribed by the State Claims Board" for filing claims, pursuant to § 81-8,212, because the State Claims Board's rules and regulations are outdated and inconsistent with the information and instructions on the only claim form currently made available for filing tort claims—the "Tort & Miscellaneous Claim Form."

## Substantial Compliance Doctrine Under PSTCA

[6] In cases under the PSTCA, we have long applied the substantial compliance doctrine when deciding whether the content of a claim satisfied the statutory presuit claim presentment requirements.[30] Section 13-905 sets out the PSTCA's presuit claim presentment requirements, and it is the counterpart to § 81-8,212 under the STCA.

Section 13-905 requires that "[a]ll [tort] claims shall be in writing and shall set forth the time and place of the occurrence giving rise to the claim and such other facts pertinent to the claim as are known to the claimant." We pause here to observe that when the Legislature prescribed the content of presuit claims under the PSTCA, it identified some requirements that are specific and objective (like the time and place of the occurrence) and some which are nonspecific and subjective (like "other facts pertinent to the claim as are known to the claimant"). The challenge of determining compliance with similar presuit notice requirements that predated the PSTCA

---

[29] Rule No. 12, *supra* note 15.

[30] See, e.g., *Jessen, supra* note 9; *West Omaha Inv., supra* note 27; *Chicago Lumber Co., supra* note 10.

led this court, more than a century ago, to adopt the substantial compliance doctrine.

In *City of Lincoln v. Pirner*,[31] we applied the substantial compliance doctrine to a statute requiring that before a tort action could be commenced against the city, "'it shall be necessary that the party file in the office of the city clerk, within three months from the time such right of action accrued, a statement giving full name and the time, place, nature, circumstances and cause of the injury or damage complained of.'" In that case, the plaintiff's written claim stated that he fell into a "coal-hole" in a city sidewalk, but it incorrectly identified the block number.[32] We rejected the city's argument that this claim was deficient, reasoning that the presuit notice requirement "should be liberally construed by the courts" and that "if the description given and the inquiries suggested by it will enable the agents and servants of the city to find the place where the accident occurred, there is a substantial compliance with the law."[33]

In *Chicago Lumber Co. v. School Dist. No. 71*,[34] we addressed whether a letter complied with the presuit claim presentment requirements of the PSTCA. At the time, those requirements were codified at Neb. Rev. Stat. § 23-2404 (Reissue 1983) and provided, as § 13-905 does now, that a claim must "set forth the time and place of the occurrence giving rise to the claim and such other facts pertinent to the claim as are known to the claimant."

The claim letter at issue did not reference a particular time or place, but it complained that the plaintiff had provided the school district with building materials and supplies in connection with a recent project to renovate a specific school. The

---

[31] *City of Lincoln v. Pirner*, 59 Neb. 634, 639-40, 81 N.W. 846, 847 (1900) (quoting Comp. Stat. ch. 13*a*, § 36 (1899)).

[32] *Pirner, supra* note 31, 59 Neb. at 637, 81 N.W. at 846.

[33] *Id.* at 640, 81 N.W. at 847.

[34] *Chicago Lumber Co., supra* note 10.

letter cited to statutes requiring the school district to obtain a construction bond from the contractor. The letter further stated that the district had failed to obtain such a bond in connection with the particular renovation project and that the plaintiff had suffered damages as a result.

[7] On appeal, the school district claimed this presuit notice was insufficient under the PSTCA because it did not state with precision the time and location of the occurrence giving rise to the claim.[35] We disagreed, reasoning that the language of § 23-2404 did not require a claimant to "state the indicated information, circumstances, or facts with the fullness or precision required in a pleading."[36] We explained "the notice requirements for a claim filed pursuant to the [PSTCA] are [to be] liberally construed so that one with a meritorious claim may not be denied relief as the result of some technical noncompliance with the formal prescriptions of the act."[37] And we said that "substantial compliance with the statutory provisions *pertaining to a claim's content* supplies the requisite and sufficient notice to a political subdivision in accordance with [the PSTCA], when the lack of compliance has caused no prejudice to the political subdivision."[38] Because the claim letter identified the contractor to whom the plaintiff had delivered the supplies and identified the particular school renovation project at issue, we found the content of the claim substantially complied with the time and place requirements under the PSTCA.

In *West Omaha Inv. v. S.I.D. No. 48*,[39] we again addressed whether the content of a letter complied with the presuit presentment requirements of the PSTCA. In a letter to the political

---

[35] *Id*.

[36] *Id.* at 368, 417 N.W.2d at 765.

[37] *Id.* at 369, 417 N.W.2d at 766.

[38] *Id*. (emphasis supplied).

[39] *West Omaha Inv., supra* note 27.

subdivision, the plaintiff claimed fire damage to specific property on a specific date and alleged that a contributing cause of the fire damage was the defendant's negligence in failing to furnish water with which to extinguish the fire. The political subdivision argued this claim was insufficient because it did not specify a dollar amount of damage. We held the contents of the letter were sufficient, noting in part that the statutory language did not "mandate that the claim contain the amount of damages or loss."[40] We also reasoned that the letter substantially complied with the statute because it set forth the date, location, and circumstances of the event giving rise to the claim and alleged that property loss had occurred as a result of the political subdivision's negligence.

As these cases illustrate, we have long applied the substantial compliance doctrine when the question presented was whether the *content* of a presuit tort claim satisfied the statute and supplied the political subdivision with sufficient notice to enable it to accomplish the primary goals of the presuit claim presentment requirements under the PSTCA and similar statutes.[41] But as other cases illustrate, we have declined to apply the substantial compliance doctrine when the question presented did not involve compliance with content-based requirements.

We have refused to apply the substantial compliance doctrine when the presuit claim was not filed with the statutorily authorized recipient,[42] reasoning that notice to the wrong recipient may deprive a political subdivision of the opportunity

---

[40] *Id*., 227 Neb. at 790, 420 N.W.2d at 295. Compare *Jessen, supra* note 9 (holding presuit presentment requirements of PSTCA not substantially met because claim did not make any demand).

[41] Accord, *Loontjer v. Robinson*, 266 Neb. 902, 914, 670 N.W.2d 301, 310 (2003) (Hendry, C.J., concurring) ("'[s]ubstantial compliance with a statute is not shown unless it is made to appear that the purpose of the statute is shown to have been served. What constitutes substantial compliance with a statute is a matter depending on the facts of each particular case'").

[42] See, e.g., *Estate of McElwee, supra* note 18; *Willis v. City of Lincoln*, 232 Neb. 533, 441 N.W.2d 846 (1989).

to investigate and settle claims and thus must be given to a person or entity specified in the statute.[43] Similarly, we have refused to apply the substantial compliance doctrine to presuit claims that did not comply with the statutory time limits under the PSTCA, reasoning that, unlike the general requirements regulating the content of presuit claims, the time limits are specific and can be determined with precision.[44] And finally, we have refused to apply the substantial compliance doctrine when the content of the purported claim was so indefinite or contingent in nature it could not fairly be characterized as presenting a tort claim at all.[45]

## Substantial Compliance Doctrine and STCA

[8] We have not yet had occasion to consider the propriety of applying the substantial compliance doctrine to the content of a presuit claim under the STCA. Generally, provisions of the STCA should be construed in harmony with similar provisions under the PSTCA.[46] We have expressly recognized the similarity of the presuit content claim presentment requirements under § 81-8,212 of the STCA and § 13-905 of the PSTCA,[47] and as discussed already, we have consistently applied the substantial compliance doctrine to the content of such claims under the PSTCA.

The State concedes the substantial compliance doctrine has been applied for decades to similar presuit claims under the

---

[43] *Willis, supra* note 42.

[44] See, *Big Crow, supra* note 9; *Schoemaker v. Metro. Utilities Dist.*, 245 Neb. 967, 515 N.W.2d 675 (1994).

[45] See, e.g., *Jessen, supra* note 9 (letter to physician accusing malpractice but not making any demand is not written tort claim under § 13-905); *Peterson v. Gering Irr. Dist.*, 219 Neb. 281, 363 N.W.2d 145 (1985) (letter to irrigation district that made no actual demand but merely alerted district to possible claim for damages that may occur is not claim).

[46] *Cole, supra* note 7.

[47] See *id.*

PSTCA, but it asks us to find the doctrine is incompatible with the STCA. As support for this argument, the State relies exclusively on the principle, articulated in *Jill B. & Travis B. v. State*,[48] that "because the State has given only conditional consent to be sued and there is no absolute waiver of immunity by the State, requirements of the [STCA] must be followed strictly." The State argues this principle is incompatible with the doctrine of substantial compliance.

We agree that strictly following the requirements of the STCA, and any statute that purports to waive the sovereign immunity of the state or a political subdivision,[49] is a foundational principle in our sovereign immunity jurisprudence. But as we explain, we are not persuaded that this principle is offended by applying the substantial compliance doctrine to the content of presuit claims under either the PSTCA or the STCA.

The principle from *Jill B. & Travis B.* on which the State relies was not being applied to the content of presuit claims. Instead, in *Jill B & Travis B.*, we were considering the applicability of exceptions to the State's waiver of sovereign immunity for tort claims arising out of misrepresentation and deceit.[50] In that context, we emphasized the importance of strictly construing statutes that are in derogation of sovereign immunity.[51]

The presuit claim procedures under the PSTCA and the STCA are not statutes in derogation of sovereign immunity, but, rather, they are administrative in nature, intended to give the government notice of a recent tort claim so it can investigate and, if appropriate, resolve the claim before suit is commenced.[52] Unlike statutes in derogation of sovereign immunity,

---

[48] *Jill B. & Travis B., supra* note 28, 297 Neb. at 69, 899 N.W.2d at 251-52.

[49] *Rutledge v. City of Kimball*, 304 Neb. 593, 935 N.W.2d 746 (2019).

[50] See § 81-8,219(4).

[51] *Jill B. & Travis B., supra* note 28.

[52] See, e.g., *Cole, supra* note 7; *Chicago Lumber Co., supra* note 10.

the presuit claim procedures do not identify the particular tort claims for which the State has conditionally waived its sovereign immunity and consented to suit,[53] nor do they identify the tort claims the State has exempted from that waiver.[54] Instead, the presuit claim presentment requirements are procedural conditions precedent to commencing a tort action against the government in district court; they are not jurisdictional.[55] We see no incompatibility between our precedent that rules of strict construction must be applied to statutes in derogation of sovereign immunity and our precedent that the doctrine of substantial compliance may be applied to statutes governing the content of presuit notice requirements.[56] Indeed, given how some of the content requirements are described in the statutes and regulations, it is difficult to imagine how strict compliance could be utilized by courts if we were to require it.

Applying the substantial compliance doctrine to the general content provisions under the PSTCA was, in some respects, a practical necessity because there was no principled way for a court to determine whether a claimant had strictly complied with the general requirement in § 13-905 that a claim include "such other facts pertinent to the claim as are known to the claimant." Similarly, under the STCA, we question how a court would go about determining whether a claimant has strictly complied with the State Claims Board's regulation requiring that a claim include "such other information as is pertinent to the claim."[57]

But as our cases make clear, our application of the substantial compliance doctrine has been limited to a claim's content,

---

[53] See, e.g., §§ 81-8,215 and 81-8,215.01.

[54] See, e.g., § 81-8,219.

[55] See *Cole, supra* note 7.

[56] Accord *Franklin v. City of Omaha*, 230 Neb. 598, 432 N.W.2d 808 (1988) (acknowledging some states apply strict construction to all presuit claim requirements under their tort claims acts, but Nebraska does not).

[57] Rule No. 12, *supra* note 15.

and the doctrine is not applied to all of the presuit notice requirements. We still apply rules of strict construction when considering whether a presuit tort claim has complied with statutory timing requirements[58] and whether it has been served on the recipient described in the statute.[59]

We therefore disagree with the State that applying the substantial compliance doctrine when analyzing the *content* of presuit tort claims under the PSTCA and the STCA is inconsistent with the well-settled principle that statutes in derogation of sovereign immunity must be strictly construed or with the principle that the "requirements of the [STCA] must be followed strictly."[60]

[9-11] We hold that when a question is raised about whether the content of a presuit tort claim complied with the manner in which the State Claims Board prescribed such claims to be filed, the substantial compliance doctrine may be applied under the STCA, just as it is applied under the PSTCA. And, consistent with what we have done under the PSTCA, the doctrine is limited to the content of the presuit claim and does not apply when such a claim is not filed with the statutorily authorized recipient[61] or when it is not filed in compliance with the statutory time limits.[62] Furthermore, application of the doctrine of substantial compliance under both the PSTCA and the STCA is confined to situations where the content of the presuit claim nevertheless satisfied the primary purpose of the presuit notice requirements by notifying the state or political subdivision about possible tort liability for a recent act or

---

[58] *Big Crow, supra* note 9; *Schoemaker,* supra note 44. See, also, *State v. Saylor*, 304 Neb. 779, 936 N.W.2d 924 (2020) (strictly construing STCA statute of limitation provisions).

[59] *Estate of McElwee, supra* note 18; *Willis,* supra note 42.

[60] *Jill B. & Travis B., supra* note 28, 297 Neb. at 69, 899 N.W.2d at 252.

[61] See, e.g., *Estate of McElwee, supra* note 18; *Willis, supra* note 42.

[62] See, e.g., *Big Crow, supra* note 9; *Schoemaker, supra* note 44.

omission so it may investigate and make a decision whether to pay or defend the claim.[63]

Having concluded the substantial compliance doctrine can apply to the content of claims under the STCA, we proceed to analyze whether Saylor's claim was properly dismissed for failing to comply with the presuit presentment requirements under the STCA.

### CONTENT OF SAYLOR'S CLAIM FORMS SUBSTANTIALLY COMPLIED

As noted, the State argues that on all 16 of Saylor's claim forms, his response to field No. 9 was insufficient in that it did not reference a dollar amount. Saylor responds that even though his answers were not stated in dollars, they nevertheless contained "all information called for"[64] on the standard form, and thus, they substantially complied with the provisions of § 81-8,212. Saylor also contends that on the record in this case, he could not have strictly complied with all the requirements of the State Claims Board.

We agree with Saylor that, in this case, there was no way he could have strictly complied with the "manner prescribed by the State Claims Board"[65] for filing his tort claims. This is so for at least two reasons. First, the specific claim form required by the regulations—the Board's form entitled "Claim for Injury or Damage"—is not the same form currently being used by the Risk Manager—the "Tort & Miscellaneous Claim Form." Consequently, there was no way the content of Saylor's claims could have strictly complied with the regulation's requirement that it "contain all information called for on the Board's 'Claim for Injury or Damage' form."[66] Second, the requirement under the regulations that the completed

---

[63] See, *Cole, supra* note 7; *Chicago Lumber Co., supra* note 10.

[64] Rule No. 12, *supra* note 15.

[65] § 81-8,212.

[66] Rule No. 12, *supra* note 15.

claim form be filed in triplicate with the secretary of the State Claims Board is not the same filing method as is required under either § 81-8,212 (which requires filing the claim "with the Risk Manager") or under the Risk Manager's standard operating procedures (which asks that the form be either emailed or mailed to the Risk Manager). Consequently, although Saylor filed his claims with the statutorily authorized recipient, there was no way he could have strictly complied with the statutory requirement that he do so "in the manner prescribed by the State Claims Board."[67] The State's briefing ignored the disparity between the Board's adopted regulations and the Risk Manager's standard operating procedures, but we agree with Saylor that, as a practical matter, this disparity prevents strict compliance with the statutory and regulatory requirements concerning the manner of filing a tort claim.

The question then is whether the content of Saylor's tort claims substantially complied with the requirements of § 81-8,212 and its related regulations prescribing the manner of filing such claims. We conclude that as to the challenged content, Saylor's tort claims did substantially comply with the requirements of § 81-8,212 and afforded the State sufficient notice to satisfy the purpose of the presuit claim presentment requirement.[68]

The State challenges the sufficiency of Saylor's responses to only field No. 9 on the claim forms, which asks for the "Total Amount of Claim." The State insists that the term "Amount" in this context necessarily requires the answer to be stated in terms of a dollar amount. But the claim form does not specify that a dollar amount must be provided, and the regulation governing the content of claims does not require that a dollar amount be provided. And to the extent the instructions in the Risk Manager's operating procedures can fairly be understood to indicate that "Total Amount of

---

[67] § 81-8,212.

[68] See *Cole, supra* note 7.

Claim" should be stated in terms of dollars, those instructions do not have the force and effect of law. On this record, we find Saylor's answer stating "[t]o be proven" substantially complied with the question asked in field No. 9.

That is particularly so where, as here, the tort claims were seeking general damages. The State's singular focus on the answer to field No. 9 paints an incomplete picture of the State's knowledge regarding the damages being sought, and it ignores altogether the additional information Saylor provided in the narrative sections of his claim forms, many of which stated that the various acts and omissions of the State caused him physical and emotional pain and suffering. So although it is true that Saylor did not, in either field No. 9 or in his narratives, place a specific dollar amount on his damages, his failure to do so is nevertheless consistent with the nature of his claims and the relief he sought.

Saylor's tort claims were premised on assertions that the State had denied him (1) timely and adequate medical care, (2) the use of his personal property, and (3) access to his attorney. His claims generally stated that this conduct caused him physical and emotional pain and suffering. In light of the nature of Saylor's claims, his answer that the total amount of his claim was "[t]o be proven" was entirely consistent with how we treat allegations of general damages.[69] It would be an odd result if we were to demand more specificity regarding general damages in a presuit tort claim than is required in the complaint once litigation is commenced.

Finally, we do not doubt the State's assertion that knowing the specific dollar amount of a tort claim can make "a significant difference in terms of how the claim is processed and at what level."[70] But given the nature of his claims and the

---

[69] See, e.g., Neb. Ct. R. Pldg. § 6-1108(a) ("[i]f the recovery of money be demanded, the amount of special damages shall be stated but the amount of general damages shall not be stated . . .").

[70] Brief for appellee at 6.

damages he seeks, we cannot find that Saylor's answer to field No. 9 caused the State any prejudice regarding its ability to investigate his claims or decide whether to settle them before litigation commenced. Indeed, the State's frank admission during oral argument that it would have sufficed for Saylor to write any amount in field No. 9, even an "exorbitant" amount such as "$20 million," belies its argument that a particular dollar amount was essential to the proper investigation and processing of his claims. Although the Risk Manager certainly has the prerogative to refuse to accept a tort claim form on the basis that it does not contain all of the information called for, that is not what happened here.

On this record, we reject the State's contention that Saylor's presuit tort claims were deficient because they did not state a specific dollar amount being sought as damages and that therefore, they were not filed "in the manner prescribed by the State Claims Board" as required by § 81-8,212. We instead find, as a matter of law, that the content of Saylor's presuit tort claims in regard to damages substantially complied with the presuit notice provisions of § 81-8,212.

Given this disposition, we do not reach Saylor's argument that the State waived his failure to comply with § 81-8,212 by accepting the forms when submitted.

## CONCLUSION

Because the content of Saylor's tort claims substantially complied with the requirements of § 81-8,212, the district court erred in granting summary judgment in favor of the State and dismissing his action. We therefore reverse the judgment in favor of the State and remand the matter for further proceedings.

Reversed and remanded for
further proceedings.

Heavican, C.J., and Papik and Freudenberg, JJ., not participating.